UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.

MT "BALTIC COMMANDER"
Schiffahrtsgesellschaft mbH
& Co. KG, as owner of
the M/V BALTIC COMMANDER I, and
as claimant to the substitute *res:*
a certain Letter of Undertaking dated
January 6, 2009
                    Plaintiff/Claimant,        IN ADMIRALTY

vs.

MASSACHUSETTS PORT AUTHORITY,
                    Defendant

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO
28 U.S.C. §2201, et. seq. and Civil Rule 57**

Plaintiff/Claimant, MT "BALTIC COMMANDER"

SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG (hereinafter referred

to as "Owner"), alleges:

**JURISDICTION**

1.    This is an action for a declaratory judgment pursuant

to 28 U.S.C. § 2201 and Civil Rule 57.

2.    Owner seeks declaratory relief on defendant's admiralty

and maritime claims within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

2

3.   Owner also seeks declaratory relief on defendant's

Massachusetts State Law claims that are supplemental to

those under the federal General Maritime Law and the Court

has jurisdiction thereover pursuant to 28 U.S.C. § 1367.

## PARTIES

5.   Owner is a German corporate entity with a principal

place of business in Germany.  Owner owns the vessel M/T

BALTIC COMMANDER I (Cyprus O.N. 1431) (hereinafter referred

to as the "Vessel").

6.   The Defendant, Massachusetts Port Authority

(hereinafter referred to as "MASSPORT"), is a Massachusetts

independent body politic and corporate with a principal

place of business located within the district.  It engages

in trade and commerce pursuant to MGL c. 93A, § 11.  It owns

the pier facility located at Conley Terminal in South

Boston, Massachusetts (hereinafter referred to as the

"Terminal").

## FACTS

7.   On or about December 31, 2008, the Vessel unexpectedly

lost her astern propulsion while transiting in navigable

waters near the Terminal in Boston Harbor, causing her to

allide therewith even though the Master and crew of the

3

Vessel maintained, inspected, and operated her diligently

and without negligence.

8.  As a result of the allision, the northern quay of the

Terminal was damaged.  The fair market value of the quay

immediately before the allision was approximately $1,062.00.

9.  On or about January 2, 2009, MASSPORT demanded security

in the form of a Letter of Undertaking from Owner's insurer

in the amount of $2.5 Million in consideration for

MASSPORT's forbearance from initiating an admiralty action

*In Rem* against the Vessel to foreclose MASSPORT's alleged

maritime lien thereon resulting from the allision.

10. On or about January 6, 2009, Owner's insurer issued to

MASSPORT a Letter of Undertaking in the amount of $2.5

Million, *a true and correct copy of which is attached hereto*

*as Exhibit 1* (hereinafter referred to as the "LOU").

11.  On or about September 23, 2009, MASSPORT sent Owner a

compromise demand letter, seeking $710,623.02 to compensate

it for damages to the quay caused by the allision.  *A true*

*and correct copy of that letter is attached hereto as*

*Exhibit 2.*

12.  On or about March 11, 2010, MASSPORT sent Owner's

insurer a demand letter purportedly under Massachusetts

General Law Chapter 93A, § 2 and 9, and Chapter 176D

4

reiterating its prior demand for $710,623.02.  *A true and correct copy of that letter is attached hereto as Exhibit 3.*

13.   Today Owner sent Massport a response letter to its March 11, 2010 demand letter, rejecting any MGL c. 93A liability and continuing its settlement offer in the amount of $10,000.00.  *A true and correct copy of that letter is attached hereto as Exhibit 4.*

14.   Owner desires to operate the Vessel and maintain a business relationship with its insurer without the burden of a pending claim against it, its Vessel, and its insurer. Owner desires to reduce the LOU in accordance with its provisions and MASSPORT's claim for damages.

**COUNT I**
**REDUCTION OF SECURITY**

15.   Owner reiterates and realleges its allegations set forth in Paragraph Nos. 1 through 14 inclusive and incorporates same as if fully set forth herein.

16.   MASSPORT's damages, if any, are limited to the value of the quay immediately prior to the allision, in the sum of $1,062.00.  MASSPORT contends its damages amount to $710,623.02.

17.   The amount of the LOU, $2.5 Million, is excessive, and as a direct and proximate result thereof, MASSPORT's claim

5

against Owner and the Vessel remains oversecured to the

injury of Owner.

   **WHEREFORE,** Plaintiff/Claimant, MT "BALTIC COMMANDER"

Schiffahrtsgesellschaft mbH & Co. KG, prays that this

Honorable Court enter judgment in favor of

Plaintiff/Claimant and against Defendant as follows:

   (1) issue an Order reducing the amount of the Letter of

Undertaking to $750,000.00; and

   (2) award Plaintiff/Claimant its costs and issue any

further relief that the Court deems fair and appropriate.

**COUNT II**
**MASSPORT'S NEGLIGENCE CLAIM**

18.   Owner reiterates and realleges its allegations set

forth in Paragraph Nos. 1 through 17 inclusive and

incorporates same as if fully set forth herein.

19.   The allision was not caused by any negligence of the

Owner or the Vessel (including her master and crew).

20.   MASSPORT's damages resulting from the allision, if any,

are no more than $1,062.00.

21.   MASSPORT improperly asserts an excessive negligence

claim against Owner and the Vessel, and as a direct and

proximate result thereof, Owner and the Vessel have been

subject to a looming claim, causing injury to Owner.

6

**WHEREFORE,** Plaintiff/Claimant, MT "BALTIC COMMANDER" Schiffahrtsgesellschaft mbH & Co. KG, prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant as follows:

(1) issue a declaration of rights that the Owner and Vessel are not liable for Massport's resulting loss claimed herein or, in the alternative, issue declaration of rights that MASSPORT's damages claimed herein, if any, are limited to the fair market value of the quay prior to the allision, $1,062; and

(2) award Plaintiff/Claimant its costs and issue any further relief that the Court deems fair and appropriate.

## COUNT III
## MGL c. 93A § 9

22.   Owner reiterates and realleges its allegations set forth in Paragraph Nos. 1 through 21 inclusive and incorporates same as if fully set forth herein.

23.   MASSPORT has no standing to assert a third party claim against Owner's insurer, Assuranceforeningen GARD- gjensidig (hereinafter referred to as "Gard"), pursuant to *MGL c. 93A, § 9.*

24.   MASSPORT's claim against Gard is improper because all offers of settlement have been reasonable pursuant to MGL c. 93A and 176D; the quay is only worth $1,062.00.

7

25.   MASSPORT's improper consumer protection claim against Gard has frustrated the business relationship between Owner and Gard, will cause increased exposure, resulting in injury to Owner.

**WHEREFORE,** Plaintiff, MT "BALTIC COMMANDER" SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG, prays that this Honorable Court enter judgment in favor of Plaintiff/Claimant and against Defendant as follows:

(1) issue a declaration of rights that Owner's insurer, Assuranceforeningen GARD- gjensidig, is not liable to MASSPORT for any violations of any provisions of Massachusetts General Law Chapters 93A or 176D;

(2)  issue a declaration of rights that MASSPORT has no standing to bring a third party claim against Owner's insurer; and

(3) award Plaintiff/Claimant its costs and issue any further relief that the Court deems fair and appropriate.


DATED at Boston, Massachusetts, this 9th day of April, 2010.

8

Plaintiff/Claimant,
MT "BALTIC COMMANDER"
Schiffahrtsgesellschaft
mbH & Co. KG

By its attorneys,
**CLINTON & MUZYKA, P.C.**

"/s/Thomas J. Muzyka"
**Thomas J. Muzyka**
**BBO NO. 365540**
88 Black Falcon Ave.
Suite 200
Boston, MA 02210
(617)723-9165
Fax: 617-720-3489
Email:
tmuzyka@clinmuzyka.com

Dated:     April 9, 2010